UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
HEATHER MAE WALTERS,

                       Plaintiff,           **MEMORANDUM**
                                          **AND OPINION**
         -against-                  CV 19-3232 (AYS)

ANDREW SAUL,
Acting Commissioner of Social Security,

                       Defendant.
-------------------------------------------------------------X
**SHIELDS, Magistrate Judge:**

Plaintiff, Heather Mae Walters ("Plaintiff" or "Walters"), commenced this action,

pursuant to 42 § U.S.C. 405(g), for review of the final decision of Andrew Saul, the Acting

Commissioner of the Social Security Administration (the "Commissioner"), which found that

Plaintiff is not entitled to disability insurance benefits under Title II of the Social Security Act

(the "Act"). Before the Court are the parties' cross-motions for judgment on the pleadings,

(Docket Entry ("DE") [16] [18]), pursuant to Federal Rule of Civil Procedure 12(c). For the

reasons set forth below, the Commissioner's motion for judgment on the pleadings is granted and

Plaintiff's motion for judgment on the pleadings is denied.

BACKGROUND

The facts of this case are drawn principally from Plaintiff's Complaint and the

Administrative Record ("AR").

I.     Plaintiff's Background and Alleged Impairments

Plaintiff was born in 1980 and was thirty-one years old during the onset of

her disability. (AR 74.) Plaintiff graduated from high school, completed two years of college,

and obtained an Associate Degree. (AR 74, 197.) She has prior work experience as a dental

1

assistant, bookkeeper, bank teller, information booth attendant, and an in-client services employee for an environmental consulting firm.  (AR 76, 197, 217.)

Plaintiff has three children: an infant, a toddler, and an older daughter.  (AR 205.)  Since the birth of her son in September 2012, Plaintiff could not work because she did not feel physically or mentally well.  (AR 79.)  Plaintiff reported that she felt "disconnected" and "off." (Id.)  In particular, Plaintiff suffered from anxiety and panic attacks, headaches, head spins, and dizziness.  (AR 212.)

Plaintiff was referred to a neuropsychiatrist for extensive testing.  (AR 79-80.)  The testing did not "find[] anything physical;" rather, the neuropsychiatrist diagnosed Plaintiff with an anxiety disorder.  (AR 80.)  Plaintiff began seeing a psychiatrist for medication and a psychologist for therapy.  (AR 81.)  Plaintiff took Zoloft and Klonopin for her symptoms, which she experienced daily.  (AR 213.)  While this treatment helped Plaintiff feel more "connected," she could not work because she was easily distracted and had difficulties adjusting to constant change.  (AR 82-83, 88.)  Plaintiff noted that she did not have any physical limitations, such as sitting, standing, or walking.  (AR 93.)

Plaintiff underwent a series of neuropsychological evaluations administered by Dr. Emily Roseman, Ph.D., affiliated with Stony Brook Medicine ("Stony Brook"), on November 14, 2013, December 16, 2013, and January 10, 2014.  (AR 263-67, 380-85.)  Plaintiff reported a history of attention weakness, learning difficulty, and a diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD").  (AR 263.)  Moreover, she reported an increased difficulty in thinking and attention skills following the birth of her son.  (Id.)  Plaintiff also stated that she stopped working in March 2012 because she was pregnant and had moved from state-to-state and was unable to find a job.  (AR 264.)  Dr. Roseman's evaluation found that Plaintiff had normal intellect at

baseline, with a possible exacerbation of attentional weakness.  (AR 265-66.)  She recommended psychotherapy for Plaintiff to address her stressors.  (AR 266.)

On June 20, 2014, Plaintiff began seeing Dr. Clarissa Bullitt, Ph.D., an affiliate with Stony Brook, who had previously provided her with psychotherapy.  (AR 275.)  During her sessions with Dr. Bullitt, Plaintiff described her stressors, which developed from her relationship with her husband, her finances and family's living arrangements, and issues related to parenting her daughter, who has ADHD.  (AR 277-316.)  Dr. Bullitt's treatment records note severe anxiety, stress, depression, obesity, headaches, and sleep deprivation.  (AR 281, 283-284, 289, 292, 299.)  Specifically, Dr. Bullitt found that Plaintiff's "significant anxiety interferes with her memory, concentration, thought process, judgment, affect regulation, and communication skills." (AR 600.)  Dr. Bullitt further opined that Plaintiff has moderate limitations interacting appropriately with the public, her supervisor and coworkers, and marked limitations responding appropriately to usual work situations and changes in a routine work setting.  (AR 601.)  She further opined that Plaintiff's "anxiety contributes to social phobia, communication, [and] affect impulsivity," and that Plaintiff "[d]oes not adapt well to change."  (AR 601.)  Further, Dr. Bullitt stated that Plaintiff's "poorly sustained focus/concentration, significant distractibility, which combined with social anxiety and poor memory (all due to anxiety) make it virtually impossible for [Plaintiff] to work with others in a usual work environment."  (Id.)

On August 26, 2014, Plaintiff visited Dr. Karen Chen, M.D., a psychiatrist at Stony Brook. (AR 368.)  On examination, Plaintiff had an anxious mood, rapid speech, and circumstantial associations.  (AR 373.)  On the other hand, Plaintiff's grooming was neat, her behavior was appropriate and cooperative, her eye contact was good, she showed an alert level of consciousness, she demonstrated coherent and logical thought processes, her insight and

judgment were fair, her impulse control was good, her memory was intact, and her concentration and attention were fair.  (AR 372.)  Consequently, Dr. Chen recommended psychotherapy.  (AR 373.)

On October 8, 2015, Plaintiff saw Dr. Ravi Ramasamy, M.D., a psychiatrist at Stony Brook. (AR 347-51.)  At this time, Plaintiff reported that she had stopped taking Lexapro when she became pregnant, although this had helped her feel less anxious.  (AR 347.)  After her pregnancy ended, Plaintiff's obstetrician started her on Zoloft and suggested that she reestablish care with a psychiatrist.  (Id.)  Similar to Dr. Chen's observations, Dr. Ramasamy found that Plaintiff had neat grooming, normal speech, and a euthymic mood.  (AR 349.)  Dr. Ramasamy also determined that Plaintiff's physical examinations in the electronic record were within normal limits after his review.  (AR 350.)  Dr. Ramasamy increased the dosage of Plaintiff's Zoloft and also prescribed her Klonopin.  (AR 350.)  Plaintiff returned to Dr. Ramasamy in the subsequent months and his findings remained largely the same.  (AR 339, 343-44.)

On December 24, 2015, Dr. Andrea Pollack, D.O., an internist, examined Plaintiff at the request of the Commissioner.  (AR 319-22.)  Plaintiff reported a history of asthma that did not require hospitalization or intubation and gastroesophageal reflux disease that improved after a gall bladder removal surgery in 2012.  (AR 319.)  Dr. Pollack noted that Plaintiff's blood pressure was elevated but a physical examination was otherwise unremarkable.  (AR 320.)  Dr. Pollack opined that Plaintiff should avoid smoke, dust, and other known respiratory irritants, heavy lifting, carrying, and exertion.  (AR 322.)

On December 24, 2015, Dr Paul Herman, Ph.D., conducted a psychiatric evaluation of Plaintiff at the Commissioner's request.  (AR 325-29.)  Plaintiff reported a history of treatment for ADHD during her teenage years and a history of intermittent outpatient mental health

4

treatment since 2013. (AR 325.)  Her medication at this time included Zoloft and Klonopin and her symptomatology included sleep disturbance, decreased appetite, long-standing difficulties with attention and concentration, easily feeling overwhelmed, and having difficulties with sustaining attention and multitasking.  (AR 325-26.)  However, Plaintiff asserted that from a psychiatric and psychological perspective, she had no significant difficulties with her daily living activities despite her mental health symptoms.  (AR 327.)  Based on his findings during the examination, Dr. Herman opined that Plaintiff had no limitations in her abilities to follow and understand simple directions and instructions, learn and perform new and simple tasks, make appropriate simple work-related decisions, maintain a regular schedule, and relate adequately to others.  (AR 327.)  Dr. Herman further opined that Plaintiff had mild limitations in her abilities to deal with stress and to maintain attention and concentration at a level sufficient for low-level employment.  (Id.)

On January 6, 2016, Plaintiff retuned to Dr. Ramasamy for a follow-up examination. (AR 333.)  Although most of the findings remained the same as those reached after the examination that took place on October 8, 2015, Plaintiff complained of feeling anxious and depressed, and had unkempt grooming.  (Id.)  Dr. Ramasamy increased the dosage of Plaintiff's Zoloft.  (AR 335.)

During Plaintiff's next visit on February 3, 2016, Dr. Ramasamy reported that Plaintiff had both an anxious and euthymic mood, her behavior was appropriate and cooperative, her eye contact was good, her level of consciousness was alert, her thought processes were coherent and logical, her abstractions were intact, her orientation was full, her insight and judgment were fair, her impulse control was good, her memory was intact, and her concentration and attention were fair.  (AR 355-56.)  During her following examination on February 29, 2016, Plaintiff

complained that she was unable to carry out all of her daily tasks, had feelings of helplessness and overwhelming meltdowns, and felt unable to take care of others because of her depression and anxiety.  (AR 579.)  Dr. Ramasamy decided to increase Plaintiff's prescription of Zoloft and advised her to continue taking Klonopin as needed.  (AR 579.)

On June 5, 2016, Dr. S. Bhutwala, Ph.D., a State Agency psychological consultant, reviewed the evidence in the record and assessed that Plaintiff had a mild restriction in her daily living activities, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, and pace, and no repeated episodes of decompensation. (AR 107-09.)  Dr. Bhutwala concluded that Plaintiff did not have a severe mental impairment. (AR 107.)

During the remaining months in 2016, Plaintiff returned to Dr. Ramasamy or one of his colleagues at Stony Brook.  Examination findings remained primarily unchanged, including a cooperative demeanor, intact memory, intact abstractions, coherent and logical thought processes, fair or intact attention and concentration, good impulse control, and neat grooming. (AR 522-23, 529-30, 536-37, 542-43, 548-49, 558-59, 564-65, 571,72, 578.) Throughout this period, Plaintiff reported that she was doing better on medication, including being able to focus more.  (AR 521, 523-24, 528, 534, 547.)  In addition, she stated that she had resumed working for five hours per day and attended a wedding.  (AR 556, 634.)

On July 10, 2017, Dr. Aimy Rehim, M.D., a colleague of Dr. Ramasamy at Stony Brook, completed a summary of treatment and found that Plaintiff reported an improvement in her performance during the 2015-16 academic year and showed an ability "to function at a high level" as evidenced by her ability to be the primary caregiver of her three children while working fifteen to twenty hours per week at night in an office.  (AR 489-90.)  Dr. Rehim noted that in the

2016-17 academic year, Plaintiff had lost her health insurance for a period of time and had difficulty affording her medications.  (AR 490.)

During subsequent visits through March 2018, Plaintiff's attention and concentration were listed as poor, but the remainder of the findings were the same as on prior examinations. (AR 515-16.)  Plaintiff continued to work part-time and care for her three children despite her deficits in attention and concentration; she also continued to manage her daughter's ADHD, which she described as being like a full-time job.  (AR 413, 470.)

On April 13, 2018, Plaintiff resumed treatment with Dr. Bullitt, whom she had not seen since 2016.  (AR 387-88, 390.)  Dr. Bullitt noted in her mental status examination that Plaintiff was adequately groomed, cooperative, alert, and fully oriented.  (AR 388.)  Plaintiff's speech was rapid and pressured, and she had impaired concentration, but good comprehension and understanding.  (Id.)  Further, Plaintiff's thought processes were tangential and circumstantial, but her thought content was appropriate to context.  (Id.)  Plaintiff's judgment, insight, and impulse control were variable, such that they were limited in terms of her mood and affect, but good in terms of her children's care.  (AR 389.)

On May 11, 2018, Dr. Bullitt completed a medical source statement of Plaintiff.  (AR 600.)  Dr. Bullitt opined that Plaintiff had no limitations in understanding, remembering, and carrying out simple instructions, or making judgments on simple work-related decisions.  (Id.) Dr. Bullitt further opined that Plaintiff had moderate limitations in understanding, remembering and carrying out complex instructions, making judgments on complex work-related decisions, and interacting appropriately with the public, supervisors, and coworkers.  (AR 601.)  Dr. Bullitt concluded that Plaintiff had marked limitations in responding appropriately to usual work situations and changes in a routine work setting.  (Id.)  She also determined that Plaintiff was

7

capable of good decision-making abilities when she was not subjected to distractions or time/resource pressure.  (AR 602.)

II.     Vocational Expert Testimony During the Hearing

Vocational Expert Dawn Blythe ("Blythe") testified before Administrative Law Judge David Tobias ("ALJ Tobias"), who presided over Plaintiff's hearing on June 6, 2018.  (AR 96.) ALJ Tobias asked Blythe to consider a hypothetical individual who could work at all exertional levels but is limited to work that does not require the ability to carry out complex tasks or instructions.  (AR 96-97.)  Blythe testified that this hypothetical individual would not be able to perform Plaintiff's past work but would be able to perform the jobs of a housekeeping cleaner, industrial cleaner, and photocopy machine operator.  (AR 97.)

ALJ Tobias further asked Blythe to consider another hypothetical individual with the additional limitation of work that involves no more than occasional superficial interaction with coworkers or the public and/or work that involves no more than occasional changes in the work setting or work process.  (AR 97.)  Blythe testified that this hypothetical individual would also be able to perform the jobs of a housekeeping cleaner, industrial cleaner, and photocopy machine operator.  (Id.)  Blythe, however, testified that such an individual would not be able to perform these jobs when assuming the additional limitation of needing time off from tasks or unscheduled breaks due to interruption from psychology-based symptoms that would exceed fifteen percent of a full-time work schedule.  (AR 98.)  In response to a scenario proposed by Plaintiff's attorney of an individual with the same limitations but who was unable to tolerate even occasional contact with a coworker or the public and could only tolerate rare or no contact with a coworker or the public, Blythe testified that such an individual would not be able to maintain the jobs of a housekeeping cleaner, industrial cleaner, or photocopy machine operator.  (AR 99.)

III.   Medical Evidence Submitted to the Appeals Council

Plaintiff submitted additional evidence to the Appeals Council.  (AR 30.)

Psychotherapy progress notes from June, July, and August of 2018 revealed that Plaintiff

continued to complain of anxiety and depression, but reported no problems with her functioning

and asserted that she completed all activities of daily living without assistance.  (AR 30, 32, 34,

36, 38, 40, 42, 44.)  Examinations further showed that Plaintiff had a dysphoric mood, but was

alert, fully oriented, neatly dressed, and that all other systems were within normal limits.  (Id.)

PROCEDURAL HISTORY

Plaintiff filed a Title II application for Social Security Disability Insurance Benefits on

November 6, 2015, alleging disability beginning on April 1, 2012 due to ADHD, adjustment,

anxiety and depression disorders, and obsessive-compulsive disorder ("OCD").  (AR 13-15.)  On

January 5, 2016, the Social Security Administration ("SSA") denied Plaintiff's application.  (AR

13.)  On March 9, 2016, Plaintiff filed a request for a hearing before an administrative law judge.

On June 6, 2018, Plaintiff appeared with counsel for a hearing before ALJ Tobias.  (AR

13.)  Blythe, the impartial vocational expert, also testified at the hearing.  (Id.)  On June 14,

2018, ALJ Tobias issued his decision, holding that Plaintiff did not meet the requirements to be

found disabled under 42 U.S.C. § 423 et seq.  (AR 15-22.)

On July 9, 2018, Plaintiff filed a request for review of ALJ Tobias's decision.  (AR 166-

169.)  On March 28, 2019, the Appeals Council denied the request.  (AR 1-6.)  On May 30,

2019, Plaintiff commenced this action, pursuant to 42 U.S.C. § 405(g), for review of ALJ

Tobias's June 14, 2018 decision.

DISCUSSION

I.      Legal Principles

      A.      Standard of Review

            "A district court may set aside a Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (quoting Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)). Thus, judicial review of the Commissioner's final decision requires "two levels of inquiry." Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). The district court "first reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); see also Arzu v. Colvin, 2015 WL 1475136, at *8 (S.D.N.Y. Apr. 1, 2015) ("First, the court must decide whether the Commissioner applied the correct legal standard.") (citing Apfel, 167 F.3d at 773); see also Calvello v. Barnhart, 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008), report and recommendation adopted, 2008 WL 4449357 (S.D.N.Y. Oct. 1, 2008) (same). Second, the Court examines the administrative record to "determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision[.]" Burgess, 537 F.3d at 128 (quoting Shaw, 221 F.3d at 131). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004)). However, the Court may not properly "affirm an administrative action on grounds different from those considered by the agency." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999).

B.    <u>Legal Principles Applicable to Disability Determination</u>

Under the Social Security Act, every individual considered to have a "disability" is entitled to disability insurance benefits.  42 U.S.C. § 423(a)(1).  The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant's impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether an individual is entitled to receive disability benefits, the Commissioner is required to conduct a five-step inquiry.  First, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity.  <u>See</u> 20 C.F.R. § 404.1520(a)(4)(i).  Second, if the claimant is not gainfully engaged in any activity, the Commissioner must determine whether the claimant has a "severe impairment" that significantly limits the claimant's ability to do basic work activities.  <u>See id.</u>  Under the applicable regulations, an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities is considered "severe."  20 C.F.R. § 404.1520(c)(a)(4)(ii).  Third, if the claimant has a severe impairment, the Commissioner must determine whether the impairment is one of those included in the Listings of the regulations.  If it is, the Commissioner will presume the claimant to be disabled, and the claimant will be eligible for benefits.  <u>See</u> 20 C.F.R. § 404.1520(c)(a)(4)(iii).

After step three, but before step four, the Commissioner must determine the claimant's "residual functional capacity" ("RFC"); that is, the claimant's ability to perform physical and mental work activities on a sustained basis, despite his or her impairments.  20 C.F.R. § 404.1520(e).  A claimant's RFC is "the most the claimant can still do despite the claimant's limitations."  20 C.F.R. § 404.1545(a).  At step four, if the claimant does not meet the criteria for being presumed disabled, the Commissioner next must determine whether the claimant possesses the RFC to perform his or her past work.  See 20 C.F.R. § 404.1520(a)(4)(iv).  Fifth, and finally, if the claimant is not capable of performing prior work, the Commissioner must determine whether the claimant is capable of performing other work for which there are a significant number of available jobs in the national economy.  See 20 C.F.R. § 404.1520(a)(4)(v).  If the claimant can make an adjustment to other work, the claimant will be found not disabled.  See id.

The claimant bears the burden of proof at the first four steps.  See Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013).  Once the claimant has established his or her inability to perform past work, however, the Commissioner has the burden of showing that "there is other gainful work in the national economy which the claimant could perform."  Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998) (quoting Carroll v. Sec'y of Health and Human Serv., 705 F.2d 638, 642 (2d Cir. 1983)).

II.    The June 14, 2018 Decision

In finding that Plaintiff was not disabled under the Act, ALJ Tobias correctly applied the five-step framework.

At step 1, ALJ Tobias found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date, April 1, 2012, through December 31, 2018, the date last insured.  (AR 15.)  Although Plaintiff had been working part-time as a clerical assistant

for Maximum Environmental Management, Inc. since February of 2016, ALJ Tobias found that her wages and work activity did not rise to the level of substantial gainful activity. (Id.)

At step 2, ALJ Tobias determined that Plaintiff's ADHD, adjustment, anxiety, and depression disorders, and OCD qualified as severe impairments pursuant to 20 CFR 404.1520(c). ALJ Tobias concluded that these impairments significantly limit Plaintiff's ability to perform basic work activities. (AR 15-16.) However, ALJ Tobias noted that Plaintiff's asthma causes no limitations with her performance of basic work activities and is non-severe. (Id.)

At step 3, ALJ Tobias found that Plaintiff "did not have an impairment or combination of impairments" that equaled one of the per se disabling conditions enumerated in 20 C.F.R. Pt. 404, Subpart P, App. 1 of the Act's regulations. (AR 16; see generally 20 C.F.R. §§ 404.1520(d); 404.1525–404.1526.)

At step 4, after careful consideration of the entire record, ALJ Tobias determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, as set forth in 20 C.F.R. § 404.1567(b), except that she is limited "to perform work that does not require the ability to carry out complex tasks or instructions, does not involve more than occasional, superficial interaction with coworkers or the public, and that involves no more than occasional changes in the work setting or work process." (AR 17.)

Finally, at step 5, abiding the testimony of the vocational expert, Blythe, ALJ Tobias held that Plaintiff was unable to perform "any past relevant work." (AR 20; see 20 C.R.F. § 404.1565.) ALJ Tobias determined that Plaintiff's past relevant work requires a greater non-exertional mental capacity than possessed by Plaintiff. (Id.) However, ALJ Tobias went on to hold that, "considering [Plaintiff's] age, education, work experience, and [RFC]," there are a "significant number [of jobs] in the national economy" that Plaintiff can perform and are

available to her that require light to medium exertional capacities. (AR 21; see 20 C.F.R. §§ 404.1569; 404.1569(a).)[1]

These findings led to the conclusion that Plaintiff was not disabled under the Act from April 1, 2012, the alleged onset date, through December 31, 2018, the date last insured. (AR 21-22; see generally 20 C.F.R. § 404.15209(g).)

III.    Plaintiff's Claims Herein

Plaintiff argues that: (1) ALJ Tobias failed to give controlling weight to Plaintiff's treating physicians; and, (2) ALJ Tobias's RFC determination is not supported by substantial evidence. With regard to Plaintiff's first argument, Plaintiff contends that ALJ Tobias failed to provide any reason why he declined to give controlling weight to Dr. Bullitt's opinion on Plaintiff's mental impairments. Further, Plaintiff argues that ALJ Tobias erroneously made no evaluation as to whether Dr. Bullitt's opinion was supported by medically acceptable clinical and laboratory diagnostic techniques or was inconsistent with other substantial evidence in the record. According to Plaintiff, Dr. Bullitt's opinion was entitled to controlling weight since it was supported by medical findings and other evidence, such as medical records from Stony Brook, her medical history, and current symptoms of depression, anxiety, and impairments in concentration. (Pl's. Mem. of Law. 12-15.)

With respect to Plaintiff's second argument, Plaintiff contends that ALJ Tobias's finding that she can perform a full range of work at all exertional levels, with limitations, is not supported by substantial evidence because ALJ Tobias failed to consider the limiting effects of Plaintiff's mental and physical impairments. Specifically, Plaintiff states that an individual with

---

[1] For instance, Blythe testified that 135,602 housekeeping cleaner positions, 12,077 industrial cleaner positions, and 17,038 photocopy machine operator positions were available nationally. (AR 21.)

an adjustment disorder "experiences more stress than would normally be expected in response to a stressful or unexpected event" and cites to Dr. Bullitt's opinion that she has marked limitations "responding appropriately to usual work situations and changes in a routine work setting" to counter ALJ Tobias's determination that Plaintiff can perform work at all exertional levels with changes in the work setting or process occurring up to two-thirds of the time.  (Pl's. Mem. of Law 16.)  Plaintiff also contends that ALJ Tobias erroneously did not take into account any limitations for being off task or having a loss of concentration in his RFC, considering that "a reasonable person would expect some limitations for being off task or loss of concentration due to ADHD, anxiety and OCD."  (Pl's. Mem. of Law 17.)  Plaintiff further argues that ALJ Tobias improperly relied on Blythe's expert opinion since ALJ Tobias's hypothetical question did not include all of Plaintiff's limitations.  (Id.)  Plaintiff notes that based on both hypothetical individuals posed by ALJ Tobias and Plaintiff's attorney, Blythe testified that such individuals would not be able to maintain any of the jobs she previously identified.  (Pl's. Mem. of Law 17-18.)

As to her physical impairments, Plaintiff contends that ALJ Tobias erred in failing to consider her exertional limitations and respiratory issues in his RFC assessment.  (Pl's Mem. of Law 19.)  Specifically, Plaintiff asserts that ALJ Tobias improperly gave limited weight to Dr. Pollack's opinion, since medical records from Stony Brook state that she suffers from headaches, GERD, acute cholecystitis, obesity, exposure to secondhand smoke, and asthma, which purportedly suggests exertional limitations and respiratory issues.  (Pl's Mem. of Law 19.)

IV.   The Commissioner's Opposition and Cross-Motion

The Commissioner counters each of Plaintiff's arguments.  The Commissioner asserts that ALJ Tobias provided a valid assessment of Plaintiff's RFC because he weighed the evidence

in the record as a whole, including the opinions of Dr. Herman and Dr. Bullitt, Plaintiff's treatment notes, and her activities of daily living. (Comm'r Mem. of Law 17.) The Commissioner contends that the opinion of a consultative examiner such as Dr. Herman, who found that Plaintiff had no limitation in her ability to follow and understand simple directions and instructions, and a mild limitation in her ability to appropriately deal with stress and maintain attention at a level sufficient for low-level employment, may serve as substantial evidence in support of ALJ Tobias's decision. (Comm'r Mem. of Law 18.) Further, the Commissioner asserts that ALJ Tobias provided good weight to Dr. Herman's opinion because it was consistent with his examination findings. (Id.)

In response to Plaintiff's claim that ALJ Tobias only provided some weight to Dr. Bullitt's opinion, rather than controlling weight, the Commissioner argues that remand is not required because ALJ Tobias incorporated Dr. Bullitt's opinion into an RFC that was consistent with the record as a whole and accounted for the limitations that Dr. Bullitt mentioned in Plaintiff's abilities to handle distractions, adapt to change and stressful situations, interact with others, and perform complex tasks. (Comm'r Mem. of Law 20.) Further, the Commissioner asserts that ALJ Tobias appropriately considered Plaintiff's objective findings, such as impaired attention and tangential thought processes, as well as her ability to work part-time and do daily routine tasks when determining that Plaintiff could perform unskilled work that involves no more than occasional changes in the workplace. (Comm'r Mem. of Law 22.)

The Commissioner further cites to Dr. Bhutwala's June 5, 2016 opinion to demonstrate that Plaintiff did not suffer from a severe mental impairment. (Comm'r Mem. of Law 23.) Dr. Bhutwala found that Plaintiff had a mild restriction in her activities of daily living and mild difficulties in maintaining social functioning, concentration, persistence, and pace. (Id.)

16

Although ALJ Tobias did not adopt this opinion in its entirety, the Commissioner states that these findings provide insight because they show that Plaintiff did not have any limitations beyond those found by ALJ Tobias.  (Comm'r Mem. of Law 24.)

In response to Plaintiff's argument that ALJ Tobias improperly evaluated her physical impairments, the Commissioner argues that ALJ Tobias reasonably determined that Plaintiff did not have a severe physical impairment because Plaintiff offered insufficient evidence to establish her ailments.  (Comm'r Mem. of Law 13-14.)  The Commissioner provides two points in support of this contention:  First, although Plaintiff suffers from headaches, GERD, acute cholecystitis, obesity, and exposure to secondhand smoke, the Commissioner asserts that Plaintiff neither had any treatment nor took any medication for these conditions during the relevant period; and, second, that the foregoing conditions imposed no functional limitations on Plaintiff.  (Comm'r Mem. of Law 13-15.)  The Commissioner points out that Plaintiff indicated that she had no limitations from a physical impairment during her application process for disability benefits. (Id.)  In addition, according to the Commissioner, Plaintiff's routine of completing daily activities, such as taking care of her three children, performing household chores, and working part-time, undermine her allegation that she has a severe physical impairment.  (Comm'r Mem. of Law 15.)

Lastly, the Commissioner argues that ALJ Tobias reasonably declined to adopt Dr. Pollack's opinion that Plaintiff should avoid smoke, dust, and other known respiratory irritants, as well as heaving lifting, carrying or exertion because he found it was inconsistent with Plaintiff's treatment records.  (Id.)  The Commissioner further supports this point by referring to Blythe's conclusion that Plaintiff could still maintain light work jobs, such as a household cleaner or a photocopy machine operator.  (Comm'r Mem. of Law 16.)  Even if ALJ Tobias

erred in declining to give significant weight to Dr. Pollack's opinion, the Commissioner contends that this would constitute harmless error since Plaintiff would not be disabled.  (Id.)

The Court now turns to the merits of the cross-motions.

V.    Analysis

A.    ALJ Tobias Did Not Err in Giving Some Weight to Dr. Bullitt's Opinion

The Court must determine "whether substantial evidence supports the ALJ's decision," not whether "there is substantial evidence supporting the [plaintiff's] view."  Bonet v. Colvin, 523 F.App'x 58, 59 (2d Cir. 2013).  This deferential standard requires the court to uphold the Commissioner's conclusion when "evidence is susceptible to more than one rational interpretation."  McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014).  Thus, a remand for further findings or a clearer explanation is only warranted when the reviewing court "would be unable to fathom the ALJ's rationale in relation to evidence in the record."  Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982).

Plaintiff asserts that ALJ Tobias erred by giving the opinion of Dr. Bullitt only "some weight" in his conclusion, rather than controlling weight, since medical findings and other evidence of record supported Dr. Bullitt's determinations of Plaintiff's RFC.  (Pl's Mem. of Law 14.)  Dr. Bullitt's treatment records provide that Plaintiff suffers from severe anxiety, stress, depression, and sleep difficulty.  (AR 281, 284, 289, 292, and 299.)  In particular, Dr. Bullitt opined in a May 11, 2018 Medical Source Statement that Plaintiff has moderate limitations in understanding, remembering, and carrying out complex instructions, such as making judgments on complex work-related decisions.  (AR 600.)  According to Dr. Bullitt, Plaintiff's "significant anxiety interferes with her memory, concentration, thought process, judgment, affect regulation and communication skills" and her "anxiety contributes to social phobia, communication, [and]

18

affect impulsivity.  [She] [d]oes <u>not</u> adapt well to change."  (AR 600-01 (emphasis in original).)
Thus, according to Dr. Bullitt, Plaintiff's conditions "make it virtually impossible for [her] to
work with others in a usual work environment."  (AR 601.)

"The opinion of a treating physician is given controlling weight if it is well supported by
medical findings and not inconsistent with other substantial evidence."  <u>Rosa v. Callahan</u>, 168
F.3d 72, 78-79 (2d 1999).  Plaintiff contends that ALJ Tobias should have granted controlling
weight to Dr. Bullitt's opinion since medical records from Stony Brook Psychiatric Associates
support her determinations.  Specifically, these records provide that Plaintiff had become averse
to crowds, described severe OCD symptoms, and reported feeling overwhelmed to a point that
she "might break" and she was often snapping at family members.  (Pl's. Mem. of Law 14-15;
AR 487.)  Further, her current symptoms include a depressed mood, loss of interest, fatigue,
irritability, mood lability, and impairments in concentration.  (<u>Id.</u>)

Plaintiff cites to <u>Burgess v. Astrue</u>, 537 F.3d 117, 129 (2d Cir. 2008), in reference to the
duty of an ALJ to "comprehensively set forth his [or her] reasons for the weight assigned to a
treating physician's opinion."  <u>Id.</u>  Specifically, Plaintiff argues that ALJ Tobias erred by not
providing controlling weight to Dr. Bullitt's opinion regarding her anxiety, stress, depression,
and sleep difficulty.  The circumstances here are distinguishable from the ALJ's decision in
<u>Burgess</u>.  There, the ALJ failed to give good reasons for not crediting the opinion of the
plaintiff's treating physician that the plaintiff suffered from a bulging disc, which was supported
by an MRI report on the plaintiff's back in the administrative record.  <u>See</u> <u>Burgess</u>, 537 F.3d at
130.  The ALJ failed to give the MRI report any consideration in his conclusion that there was no
objective evidence to support the plaintiff's disability claim and instead relied on a physician's

opinion that was itself flawed since it did not account for the same report in the record.  See id. at 130-31.

In contrast, ALJ Tobias did not overlook Dr. Bullitt's opinion.  Rather, ALJ Tobias accorded "some weight" to the opinion and noted that it is generally consistent with "symptoms noted, which include anxiety interfering with memory" and "[Plaintiff's] part-time work, which she has been performing since 2016."  (AR 19.)  While ALJ Tobias did not give controlling weight to this opinion, he had discretion to attribute some weight to it in light of the evidence in the record as a whole.  Accordingly, the ALJ's decision is affirmed on this ground.

B.     There is Substantial Evidence to Support ALJ Tobias's RFC Determination

To properly determine a claimant's RFC, a reviewing court must consider "the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988); see also Tricarico v. Colvin, 681 Fed.Appx. 98, 101 (2d Cir. 2017) (noting that an "ALJ's conclusion need not perfectly correspond to any one medical assessment as long as it is supported by the record as a whole").  Such evidence includes, inter alia, objective medical evidence, medical opinions, medical history, clinical findings, and the claimant's own assessment of limitations.  See 20 C.F.R. § 416.913 (a)(1)-(5).  Although needed to develop the record fully and fairly, "an ALJ is not required to discuss every piece of evidence submitted."  Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).  Thus, the ALJ's finding must be sustained if supported by substantial evidence "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [ALJ's]."  Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y. 1992).

Dr. Bullitt's opinion did not warrant controlling weight from ALJ Tobias since there was other substantial evidence in the record, such as the opinion of Dr. Herman, which is consistent with ALJ Tobias's findings regarding Plaintiff's capacity to perform low-level employment. "Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician . . . the opinion of [a] treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran v. Barnhart, 362 F.3d 28, 32 (2d 2004); see also Salinovich v. Comm'r of Soc. Sec., 783 Fed.Appx. 67, 68 (2d Cir. 2019) (holding that substantial evidence supported the ALJ's decision to afford only some weight to the opinion of the plaintiff's treating physician since it was inconsistent with the physician's treatment notes, another treating physician's assessment, and the plaintiff's testimony).  ALJ Tobias accounted for additional sources of evidence, such as the opinion of Dr. Herman, Plaintiff's treating notes, and Plaintiff's activities of her daily routines, to develop his RFC finding.  ALJ Tobias accorded good weight to the opinion of Dr. Herman, who concluded that Plaintiff could follow and understand simple directions, had mild limitations maintaining attention, concentration at a level sufficient for low-level employment and dealing with stress, and no difficulty learning new simple tasks, maintaining a regular schedule, and relating to others.  (AR 19-20.)  Dr. Herman's opinion was consistent with his examination findings, which concluded that Plaintiff had adequate social skills, an appropriate appearance and neutral mood, her cognitive functioning was average, and her thought processes were coherent and goal directed.  (AR 326.)

ALJ Tobias also incorporated Dr. Bullitt's opinion into an RFC that was consistent with the administrative record.  Dr. Bullitt opined that Plaintiff had no limitations in understanding,

remembering, and carrying out simple instructions, and making judgments on simple work-related decisions.  (AR 600.)  Further, Dr. Bullitt determined that Plaintiff had moderate limitations in understanding, remembering and carrying out complex instructions, making judgments on complex work-related decisions, and interacting with the public, supervisors, or coworkers difficult.  (AR 600-01.)  ALJ Tobias accounted for these limitations by restricting Plaintiff to do unskilled work that does not involve more than occasional, superficial interactions with coworkers or the public.  (AR 17.)

In addition, Dr. Bullitt also opined that Plaintiff had marked limitations responding appropriately to usual work situations and changes in a routine work setting.  (AR 601.)  A treating physician's finding that a patient suffers from a marked limitation in interactions with others and changes to a routine work setting does not conclusively demonstrate that the patient is disabled.  See Fiducia v. Comm'r of Soc. Sec., No. 1:13-CV-285, 2015 WL 4078192, at *4 (N.D.N.Y. July 2, 2015) (finding that a marked limitation in interacting with others does not establish that the claimant is disabled, particularly because the ALJ limited the claimant to occasional interaction with others).

ALJ Tobias also assessed the facts that Plaintiff was working part-time fifteen to twenty hours per week, managing a household with her three children, and conducting various activities of daily living.  (AR 18.)  ALJ Tobias accounted for Dr. Bullitt's opinion and Plaintiff's activities by restricting Plaintiff to work that involves no more than occasional changes in the work setting or work process.  (AR 17.)  Since there is substantial evidence in the record to support ALJ Tobias's assessment, the Court affirms his findings on Plaintiff's RFC.

C.      ALJ Tobias Properly Assessed Whether Plaintiff Suffered from Physical Impairments

This Court may not determine de novo the severity of a claimant's impairments, but rather must uphold the ALJ's determination, as long as it was based on substantial evidence in the record, even where contrary evidence exists.  See Del Carmen Rojas v. Berryhill, 2019 WL 2453342, at *23 (S.D.N.Y. Jan. 30, 2019); see also Lau v. Comm'r of Soc. Sec., 339 F. Supp. 3d 421, 431 (S.D.N.Y. 2018) (noting that "even if we find substantial evidence supporting the claimant's position [that his mental impairments were severe], we still must uphold the ALJ's decision if substantial evidence supports the ALJ's decision").  Further, "an ALJ is entitled to discount a medical opinion that is not supported by relevant evidence, is not well-explained, and is inconsistent with the record as a whole."  Williams-Walker v. Colvin, 15-CV-6288-FPG, 2016 WL 5404594, at *4 (W.D.N.Y. Sept. 28, 2016); see also 20 C.F.R. 404.1527(c)(3) (stating that "[t]he more a medical source presents evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion").

Plaintiff asserts that ALJ Tobias further erred in failing to consider Plaintiff's physical impairments in his RFC assessment.  (Pl's. Mem. of Law 19.)  ALJ Tobias instead determined that Plaintiff's treatment records suggest no exertional limitations and include no treatment or notations of care for any respiratory issues.  (AR 19.)  Specifically, Plaintiff contends that ALJ Tobias improperly gave limited weight to Dr. Pollack's opinion and medical records from Stony Brook, which noted that Plaintiff suffers from headaches, GERD, acute cholecystitis, obesity, and exposure to secondhand smoke.  (Pl's. Mem. of Law 19.)  In light of these findings, ALJ Tobias stated that the opinion of Dr. Pollack, "while consistent with [Plaintiff's] allegations, is not supported by any treatment records."  (AR 19.)

23

ALJ Tobias properly accorded limited weight to the opinion of Dr. Pollack since evidence in the record demonstrates that Plaintiff has managed her physical conditions and such conditions do not impose any functional limitations.  For instance, Plaintiff required no treatment after her gallbladder removal surgery in 2012.  (AR 319.)  She also did not require any medication to treat her history of GERD.  (Id.)  Lastly, although Plaintiff's exposure to second-hand smoke contributed to her asthma, Plaintiff had no treatment for her asthma with any practitioner, did not use a nebulizer, and had not required hospitalization or intubation at any time.  (Id.)

Nor did Plaintiff mention suffering from any physical impairments in her November 6, 2015 application for disability benefits.  (AR 196.)  In her December 2015 questionnaire regarding her ability to function, Plaintiff did not state having any problems with physical activities, such as lifting, standing, walking, sitting, climbing stairs, squatting, or reaching.  (AR 210-11.)  During the June 6, 2018 hearing, Plaintiff reiterated not having any physical limitations.  Rather, she described her condition as "more of a mental thing" and reported that her doctors were not "finding anything physical."  (AR 80, 93.)  Since Plaintiff herself did not assert any limitations from her respiratory issues, ALJ Tobias properly weighed Dr. Pollack's opinion.  See Herrera v. Colvin, 14 Civ. 7802 (RWS), 2016 WL 1298990, at *7 (S.D.N.Y. March 31, 2016) (holding that the ALJ properly found that the plaintiff did not suffer from a severe mental impairment since the plaintiff never alleged that a mental impairment was the basis of her disability).  Thus, the Court upholds ALJ Tobias's assessment of Plaintiff's physical impairments in his determination of Plaintiff's RFC.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is denied, the Commissioner's cross-motion for judgment on the pleadings is granted, and the June 11, 2018 decision of the ALJ is affirmed.  The Clerk of the Court is directed to enter judgment accordingly and to close this case.


**SO ORDERED.**

Dated: October 19, 2021
      Central Islip, New York

                                    /s/ Anne Y. Shields
                                    ANNE Y. SHIELDS
                                    United States Magistrate Judge